UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JERSEY OSORIO,<br><br>    Plaintiff,<br>v.<br><br>STATE OF CONNECTICUT,<br><br>    Defendant. | Civil Action No.<br>3:17 - CV - 1210 (CSH)<br><br><br>MARCH 22, 2018 |

## RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. 6]

**HAIGHT, Senior District Judge:**

### I. INTRODUCTION

*Pro se* plaintiff Jersey Osorio is an incarcerated prisoner who pled guilty under the Alford doctrine in Connecticut State Superior Court, County of Litchfield, in December 2011 to one charge of fourth-degree sexual assault and risk of injury to a minor, Conn. Gen. Stat. § 53-21. This charge stemmed from an incident of sexual assault which involved a fourteen-year-old girl he met on the internet. Following his plea, on February 10, 2012, Osorio was sentenced to 9 years of imprisonment. He is currently housed at Brooklyn Correctional Institution, located at 59 Hartford Road, Brooklyn, Connecticut.[1]

At the time he was charged and sentenced, Osorio was a resident of Massachusetts. He brings

---

[1] The Court notes that despite his current incarceration in Brooklyn C.I., Plaintiff has listed his address of record as "111 Memorial Drive, Pittsfield, MA 01201." Plaintiff is advised that it is his duty to maintain his current and correct address with the Court for the purpose of litigating this case; and failure to do so, may result in dismissal of his action. *See* D. Conn. L. Civ. R. 83.1(c)2 ("Any self-represented party must provide an address where service can be made upon such party.").

1

this action against the State of Connecticut, protesting his conviction in Connecticut state court. In particular, he asks this Court to vacate his conviction for lack of subject matter jurisdiction and to release him from prison. Plaintiff describes himself as a "real flesh and blood man/woman, a State Citizen and Inhabitant of the County of Berkshire, Massachusetts" and demands "written proof (verified and demonstrated evidence) of jurisdiction over His Proper Person." Doc. 1, at 3. He argues that "[a] court," in this case the Connecticut Superior Court in which he was convicted, "cannot confer jurisdiction where none exists and cannot make a void proceeding valid." *Id.*

Defendant State of Connecticut moves to dismiss Plaintiff's action on three grounds. Doc. 6. Defendant asserts that Eleventh Amendment sovereign immunity bars the claim against the state. Doc. 6-1, at 1. In addition, Defendant argues that the entire action is barred by *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994), in which the United States Supreme Court clarified that "[t]he federal habeas corpus statute, . . . [28 U.S.C. § 2254], requires that state prisoners first seek redress in a state forum." Finally, and in any event, Defendant maintains that Plaintiff's claim is "patently frivolous" and thus subject to dismissal. Doc. 6-1, at 1 (citing *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992), in which a Colorado native appellant's arguments regarding Idaho's prosecution of him were "without merit, patently frivolous, and . . . rejected without expending any more of the Court's resources"). This Ruling resolves Defendant's motion.

## II. DISCUSSION

The Court notes at the outset that Plaintiff has failed to respond to the Defendant's motion to dismiss [Doc. 6] and the requisite twenty-one (21) day filing period to respond has expired. Pursuant to Local Civil Rule 7(a)(2), "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient

2

grounds to deny the motion." D.Conn. L. Civ. R. 7(a)(2). To ensure notice to Plaintiff, Defendant served its motion to dismiss upon him at both his address of record in Massachusetts and his actual address in Brooklyn C.I. *See* Doc. 6-1, at 1 n.1.

Turning to the substance of Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will review and analyze the Complaint to determine whether it fails to state a claim.

A.  **Standard of Review**

Although Defendant brings this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim," under 28 U.S.C. § 1915A, the Court must also review a prisoner's civil complaint "seek[ing] redress from a governmental entity" and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2).

In the case at bar, Plaintiff provided a Massachusetts address as his address of record and did not designate his claim as a prisoner action. Nonetheless, he is an incarcerated prisoner who is suing a governmental entity to contest his conviction. His action is thus subject to initial screening by the Court under § 1915A.

Whether analyzed under Rule 12(b)(6) or § 1915A, the standard of review for dismissal for failure to state a claim is set forth in the United States Supreme Court's seminal holding of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under *Iqbal*, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64. When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). *See also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing

---

[2] The Second Circuit has consistently adhered to the United States Supreme Court's seminal "plausibility" standard set forth in *Iqbal*. *See, e.g.*, *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017); *Christine Asia Co. v. Ma*, No. 16-2519-CV, 2017 WL 6003340, at *1 (2d Cir. Dec. 5, 2017); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015); *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119-20 (2d Cir. 2013).

*Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)(per curiam)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same)*; Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (Where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally.") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[].").

Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). Nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Id.*

B.  **Eleventh Amendment Sovereignty of Connecticut**

Defendant State of Connecticut first asserts that "[t]he Eleventh Amendment bars lawsuits against states absent consent from the state or abrogation of the immunity by Congress under § 5 of the Fourteenth Amendment." Doc. 6-1, at 3 (citing *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011), which held that "absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."). Connecticut has not waived such immunity and Plaintiff does not allege otherwise.

Defendant points out that the only exception to such immunity was carved out in the case of *Ex parte Young*, 209 U.S. 123, 126 (1908), which permits "*prospective* injunctive relief against state officials for ongoing federal law violations." Doc. 6-1, at 4 (quoting *White v. Martin*, 26 F. Supp. 385, 388 (D.Conn. 1998)) (emphasis added by Defendant). Defendant notes that the "exception is narrow" and asserts that it also fails to apply to claims "seeking judgments declaring that defendants violated federal law in the past." *Id.* (citing, *inter alia*, *Lee v. Dep't of Children and Families*, 939 F. Supp. 2d 160, 166 (D.Conn. 2013)).

As Defendant asserts, the Eleventh Amendment bars suits for money damages against a state or its agencies unless the state has unequivocally consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Specifically, "[t]he Eleventh Amendment precludes suits against states unless the state expressly waives its immunity or Congress abrogates that immunity." *Li v. Lorenzo*, No. 16-3530, 2017 WL 4410586, at *1 (2d Cir. Oct. 4, 2017) (citing *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 94-95 (2d Cir. 2002)). "This includes suits against state officials in their official capacities" *Li*, 2017 WL 4410586, at *1 (citing *Davis v. New York*, 316 F.3d 93, 101-02 (2d Cir. 2002)). *See also Pennhurst State Sch. & Hosp.*

465 U.S. at 101 ("The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest.") (citation and internal quotation marks omitted); *Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 28 n. 1 (2d Cir.1991) ("When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.") (citation and internal quotation marks omitted).

However, in *Edelman v. Jordan*, 415 U.S. 651, 664 (1974), the Supreme Court held that the Eleventh Amendment does not bar an action against a state official for violation of federal law if the plaintiff seeks an injunction regarding that official's future conduct. *See also Feng Li v. Rabner,* 643 F. App'x 57, 58-59 (2d Cir. 2016) ("As to the individual defendants, generally, state officials are not immune under the Eleventh Amendment if the 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'") (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635, 645 (2002)) (internal quotation marks omitted).

In the case at bar, Plaintiff's complaint alleges misconduct by the State in violating his rights by convicting him of a state criminal offense without jurisdiction. Doc.1, at 10, 13. Plaintiff further alleges that "the judge and the prosecutor use[d] deceit and trickery to cause [him] to believe that he is actually the defendant." *Id.*, at 10. By engaging in such deceit and trickery, the judge and prosecutor allegedly "breached their fiduciary duties" and "their contract with the public." *Id.* Whether one interprets Plaintiff's allegations as a suit against the State of Connecticut or its agent, Assistant State's Attorney Dawn Gallo, in her official capacity, the complaint addresses past acts of the State, prosecutor, and judge, rather than seeking an injunction against prospective prosecution.

Specifically, all the alleged conduct in Plaintiff's complaint pertains to the prosecution and

7

conviction of Osorio, which concluded in 2012. Thus, his request for relief would not prevent future conduct. Absent a request for prospective relief to remedy an ongoing violation of federal law, a declaration that the State violated Plaintiff's rights in the past is barred by the Eleventh Amendment. *See, e.g., Green v. Mansour*, 474 U.S. 64, 73 (1985) (holding that the Eleventh Amendment prevents federal courts from issuing a declaratory judgment that state officials violated federal law in the past if there is "no claimed continuing violation of federal law" or "any threat of state officials violating the . . . law in the future").

Furthermore, Plaintiff seeks monetary damages from the State and/or its agents. In his Complaint, he requests "damages for injuries via his administrative process and procedures according to the Common Laws of the Land." Doc. 1, at 5. Broadly extrapolating damages from *Trezevant v. City of Tampa*, 741 F.2d 336 (11th Cir. 1984), an unrelated and inapposite case he believes set precedent for a prisoner's damages against a governmental entity, Osorio specifies that he would like to recover "$65,217.91 per hour, plus punitive damages in the amount decided solely by Jersey Osorio, Sui Juris, Secured Party." *Id.* As set forth *supra*, the Eleventh Amendment bars such actions against a State and its agents, acting in their official capacities, for money damages. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99.

Furthermore, under § 1915A, a complaint must be dismissed as "frivolous" if "it is clear that the defendants are immune from suit." Under the Eleventh Amendment, the State of Connecticut is immune from this suit.

## C. *Heck v. Humphrey*, 512 U.S. 477 (1984)

Even were this Court to construe Plaintiff's Complaint to find a request for injunctive relief regarding future State conduct – and thus an exception to the Eleventh Amendment bar – his claim

would still be precluded by the United States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1984). In that case, the Supreme Court stated that the federal habeas corpus statute, 28 U.S.C. § 2254, requires that state prisoners first seek redress in a state forum. 512 U.S. at 480-81. Reiterating its holding in *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973), the *Heck* court discussed "potential overlap" between 42 U.S.C. § 1983 and the habeas corpus statute and once again declared that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481. The *Heck* court then "emphasize[d] that *Preiser* did not create an exception to the "no exhaustion" rule of § 1983; it merely held that certain claims by state prisoners are not cognizable under that provision, and must be brought in *habeas corpus proceedings*, which do *contain an exhaustion requirement*." *Id.* (emphasis added).

In the case at bar, Plaintiff seeks release from prison, asserting that "[t]hese Courts have no jurisdiction over living men." Doc. 1, at 8. He accuses "the judge and the prosecutor" of obtaining his conviction through fraud ("deceit and trickery"), *id.,* at 8, 10; and requests "[t]hat the Secured Party, Jersey Osorio© be DISCHARGED from the custody of any/all STATE OF CONNECTICUT AGENCIES," *id.,* at 13.[3] A state prisoner who challenges the fact of his confinement must exhaust his state remedies prior to suing in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 71 (2d Cir. 2011) ("Notably, we will not consider claims that have not been exhausted by fair presentation to the state courts . . . .") (citations omitted), *cert. denied sub nom.*, *McKinnon v. LaValley*, 565 U.S.

---

[3] The Court notes that Osorio has placed a copyright symbol next to his name in various locations in his Complaint. *See, e.g.*, Doc. 1, at 10, 11, 12, 13, 14. This symbol may indicate his adherence to the "sovereign citizens" movement discussed *infra*.

9

1181 (2012).

"In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan*, 526 U.S. at 842. This exhaustion doctrine, first announced in *Ex parte Royall*, 117 U.S. 241 (1886), is codified at 28 U.S.C. § 2254(b)(1). That statutory provision states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State . . .
> .

28 U.S.C. § 2254 (b)(1)(A). Osorio's habeas action will be dismissed for failure to exhaust state remedies.

D. **"Sovereign Citizen" and/or "Redemptionist Theory"– "Frivolous" Claim**

Finally, and alternatively, Plaintiff's complaint must be dismissed as failing to state a plausible claim under Rule 12(b)(6), Fed. R. Civ. P., and as "frivolous" under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, because it is based on an "indisputably meritless legal theory." *Montero v. Travis*, 171 F.3d 757, 759-60 (2d Cir. 1999) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 327 (1989)). Given the language of Plaintiff's Complaint – declaring himself a "real flesh and blood man," "a natural born, free, living, breathing, flesh and blood human with sentient and more existence . . . upon the soil, and "the living man," Doc. 1, at 1, 6, 10 – Plaintiff appears to consider himself a "sovereign citizen." As the Second Circuit has described, "sovereign citizens" is "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013).

Numerous Circuits have noted the rise of this movement and rejected its underlying premise that federal courts lack jurisdiction over all "living men." *See, e.g.*, *Linge v. State of Georgia, Inc.*, 569 F. App'x 895, 896 (11th Cir. 2014) ("[T]o the extent that [the plaintiff] more broadly argues that he is a sovereign citizen and not subject to . . . Georgia laws, both we and the district court lack jurisdiction because it is 'wholly insubstantial and frivolous.'") (citations omitted); *United States v. Jonassen*, 759 F.3d 653, 657 (7th Cir. 2014) ("Defendants claiming to be 'sovereign citizens' assert that the federal government is illegitimate and insist that they are not subject to its jurisdiction. The defense has 'no conceivable validity in American law.'") (citing *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir.1990)), *cert. denied*, __U.S. __, 136 S.Ct. 152 (2015).

District courts and the Connecticut Appellate Court have similarly dismissed "sovereign citizen" claims. See, *e.g.*, *Santana v. United States*, No. 13-CR-536 (PKC), 2017 WL 2470834, at *1 (S.D.N.Y. June 6, 2017) ("In his section 2255 motion and other documents filed in this case, Santana appears to rely on arguments common to the "sovereign citizen" or "redemptionist" movements which have been consistently rejected by federal courts."); *In re Sterling*, 565 B.R. 258, 262 n.3 (S.D.N.Y. 2017) ("This Court adds its voice to the judicial chorus rejecting, as legally unsupportable, Sovereign-Citizen-based challenges to federal law."); *Faltine v. Murphy*, No. 15CV3961RRMLB, 2016 WL 3162058, at *2 (E.D.N.Y. June 3, 2016) ("The 'sovereign citizen' belief system has been described by other courts as 'completely without merit,' 'patently frivolous,' and having 'no conceivable validity in American law.'") (quoting *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir.1992)); *Johnson v. Raffy's Café I, LLC*, 173 Conn. App. 193, 201 (2017) ("Th[is] [sovereign citizen] defense has no conceivable validity in American law.") (citation and internal quotation marks omitted).

The Third Circuit described the rise of the "redemptionist" or "sovereign citizen" movement, as follows:

> "Redemptionist" theory . . . propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

*Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008) (*per curiam*).[4]

The Third Circuit's description of "redemptionist" and/or "sovereign citizen" theory aligns with Osorio's allegations in, and attachments to, his Complaint. Not only does he describe himself as a "living man," but he refers to himself repeatedly as a "Secured Party," stating:

> I request adjustment to the accounts to zero and the release of all proceeds, products, accounts, any/all fixtures and/or instruments, bonds and order them to be sent to the Secured Party. In that, no one is registered in the local chamber/community to operate against this flesh and blood human in commerce.

Doc. 1, at 11. In addition, Osorio has attached a "UCC Financing Statement" to his Complaint, signifying and declaring his "stature as a Non-Resident-Alien in regards to U.S. Inc." Doc. 1-5, at 4. Osorio has also filed a "Common Law Copyright Notice" to his Complaint, intending to evidence a copyright placed on his name and thereby prevent any governmental agency from using his name in records or documents. Doc. 1-10, at 2. Furthermore, Osorio has attached an Affidavit in which

---

[4] *See* note 3, *supra*.

he states that he "is 'of the people' and is above the corporate government called Connecticut/UNITED STATES OF AMERICA, operating in a de-facto-bankrupt capacity/status." Doc. 1-10, at 4. In that affidavit, Osorio declares that he "filed a U.C.C. Financing Statement (UCC-1) . . . to perfect a Security interest to initiate redemption as a matter of right." *Id.* Finally, for damages, Osorio demands large sums of money from the State of Connecticut to keep him in custody as a prisoner. Doc. 1, at 5 (requesting $65,217.91 per hour, plus punitive damages in an amount to be decided by Osorio, the Secured Party).

The crux of Osorio's Complaint is that this Court and those of the State of Connecticut have no "jurisdiction over living men."[5] Doc. 1, at 8 ("[B]ecause the Sovereign (the people upon whom the sovereignty rest in this nation), are not named in the codes, and therefore, are not subject to the codes. . . .[t]hese Courts have no jurisdiction over living men."). He explicitly asserts that he, the "Secured Party/Plaintiff is not a subject of, or to . . . the United States Constitution, its Ordinances, Statutes, Codes, or Regulations; . . . nor Judicial Jurisdiction of its actor(s), agent(s), officer(s), employee(s), or elected officials of Government . . . ." *Id.*, at 6. Because Plaintiff's claims are all premised on this "sovereign citizen" and/or "redemptionist" theory, they fail to state a plausible claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678. Accordingly, they are "frivolous" and will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A(b)(1)-(2).[6]

---

[5] For example, Osorio states that "it is outside of any court discretion to lay claim as to any Rule 12(b) Failure to State a Claim . . . decision as said decision would, in fact, be outside the jurisdiction of any court." Doc. 1, at 3.

[6] In addition to failing to state a claim under Rule 12(b)(6), Fed. R. Civ. P., Osorio's action is also dismissed under 28 U.S.C. § 1915A(b)(1)-(2) as a prisoner's action against a governmental entity that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

## III. **CONCLUSION**

For the foregoing reasons, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A(b)(1)-(2), Defendant's "Motion to Dismiss" [Doc. 6] for failure to state a claim is GRANTED in its entirety. The Clerk is directed to close the file.

It is SO ORDERED.

Signed: New Haven, Connecticut.
March 22, 2018

                                           */s/Charles S. Haight, Jr.*
                                           CHARLES S. HAIGHT, JR.
                                           Senior United States District Judge

---

(2) seeks monetary relief from a defendant who is immune from such relief."